UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALGA ANTOINETTE JONES,

    *Plaintiff*,

v.    CASE NO. 12-CV-11785

COMMISSIONER OF    DISTRICT JUDGE PAUL D. BORMAN
SOCIAL SECURITY,    MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and for Disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Admin. Ord. 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 11.)

Plaintiff[2] was 42 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 51.) Plaintiff's past employment includes work as a housekeeper for one year, as a direct care worker for four years and as an assembly worker for seven years. (Tr. at 123.) Plaintiff filed the instant claim on June 23, 2008, alleging that she became unable to work on October 23, 2007. (Tr. at 104.) The claim was denied at the initial administrative stage. (Tr. at 62.) In denying Plaintiff's claim, the Commissioner considered degenerative and discogenic disorders of the lumbar spine with radiculopathy and affective disorders as possible bases for disability. (*Id.*) On April 19, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Elliott Bunce, who considered the application for benefits *de novo*. (Tr. at 15-30, 47-61.) In a decision dated May 13, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 26.) Plaintiff requested a review of this decision on May 22, 2010. (Tr. at 12-14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 11, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On April 20, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B.    Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S.

---

[2] As noted by Plaintiff's counsel in the motion and brief (Doc. 11 at 5 n.1), Plaintiff identifies as a woman and thus will be referred to as such.

521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r*

*of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

>Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2013,

and that Plaintiff had not engaged in substantial gainful activity since October 23, 2007, the alleged onset date. (Tr. at 20.) At step two, the ALJ found that Plaintiff's degenerative disc disease, obesity, fibromyositis, and neuropathy were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 21.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. at 24.) At step five, the ALJ found that Plaintiff retains the residual functional capacity to perform a limited range of sedentary work. (Tr. at 21-23.) The ALJ also found that Plaintiff was a younger individual (age 18 to 44) on the alleged disability onset date. (Tr. at 24.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 25-26.)

### E. Administrative Record

A review of the relevant medical evidence shows that on March 28, 2007, while working for General Motors, Plaintiff "fell backwards injuring her left leg." (Tr. at 198.) A work accident on May 16, 2006, was also referred to in the record. (Tr. at 202.)

An MRI of Plaintiff's lumbar spine taken on October 15, 2007, showed "disc desiccation of the L5-S1 level, consistent with changes of degenerative disease" and "degenerative spurring of the facet joints bilaterally at the L5-S1 levels as well as to a lesser extent at the L3-4 level." (Tr. at 195.) There was "no evidence of disc herniation, spinal stenosis, or compromise" at any level. (Tr. at 195-96.)

On November 2, 2007, an MRI of Plaintiff's left hip was a "[n]egative study for avascular necrosis, a healing fracture or trochanter bursitis left hip." (Tr. at 193.)

An EMG performed by Jeffrey Levin, M.D., on November 8, 2007, showed "L4-5 radiculopathy, left greater than right." (Tr. at 197.)

On December 8, 2007, Plaintiff was referred by Dr. Ononuju to Gerald R. Schell, M.D., who noted that although Plaintiff "had this symptom of radicular pain and has had some imaging studies done showing that there are some minimal facet changes in the joints," she "does not have major evidence for lumbar stenosis, no problems with her hip and does not have any major degenerative disc disease." (Tr. at 191.) Dr. Schell conducted a neurological evaluation and concluded that although Plaintiff "does walk with a mild limp" and "has a pain syndrome[,]" he was "not sure [of] the etiology" but "[i]t certainly is nothing neurosurgical[.]" (*Id.*)

Plaintiff was treated by Chidozie Ononuju, D.O., from October 2007 through June 2008. (Tr. at 202-18.) On June 5, 2008, Dr. Ononuju diagnosed fatigue, fibromyositis, headache, insomnia, lumbago (lower back pain), muscle spasm and neuropathy. (Tr. at 202.) Dr. Ononuju concluded that "[r]isk factors are low, but include pain and depression. Prognosis is good with compliance to medication." (*Id.*) The same findings were made in August 2008. (Tr. at 262.)

A Psychiatric Review Technique was completed on August 20, 2008, by Bruce G. Douglass, Ph.D., who found that Plaintiff's affective disorder (depression) and anxiety-related disorder (anxiety) were not severe. (Tr. at 222, 225, 227.) Dr. Douglass concluded that Plaintiff was only mildly limited in activities of daily living, maintaining social functioning, and in maintaining concentration, persistence or pace. (Tr. at 232.)

On September 4, 2008, Plaintiff was examined by Dr. Levin, who diagnosed lumbar radiculopathy, most prominent at L4-5 on the left side, and continued Plaintiff on her present regimen of medications. (Tr. at 293.)

On September 20, 2008, Plaintiff was examined at the request of Disability Determination Services ("DDS") by Sujeeth R. Punnam, M.D. (Tr. at 238-40.) Plaintiff reported that "[i]f she takes Flexeril and Vicodin she can walk about an hour before taking a rest," that she "can sit in

8

one position with no back support for about 40-45 minutes at a time," and that she can stand for "about 15-20 minutes at a time." (Tr. at 238.) Plaintiff's strength in her upper and lower extremities was 5/5, dorsiflexion in left lower extremity was about 4/5, and thigh muscles about 4/5. (Tr. at 240.) Plaintiff's "gait [was] normal" and her "[s]ensation [was] intact." (Tr. at 240.) Dr. Punnam diagnosed low back pain with sciatica and L4-5 radiculoathy, degenerative disc disease of the lumbar spine, and degenerative joint disease of the left knee. (*Id.*)

A Physical Residual Functional Capacity ("RFC") Assessment was completed by Loretta Boger on September 30, 2008. (Tr. at 245-52.) The assessment concluded that Plaintiff was able to lift 20 pounds occasionally, 10 pounds frequently, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and was limited to occasional pushing and pulling in her lower extremities. (Tr. at 246.) It was also determined that Plaintiff should never climb ladders and should only occasionally be required to climb stairs, kneel, or crawl. (Tr. at 247.) There were no manipulative, visual, communicative or environmental limitations established except that Plaintiff should avoid hazards due to use of narcotic medications. (Tr. at 248-49.) It was noted that there was a treating source statement on file, i.e., that Dr. Ononuju determined that Plaintiff was unable to work from October 25 through 28, 2007, but that she could return to work on October 29, 2007. (Tr. at 251.) The assessment noted that it adopted the medical source statement because the assessor found that Plaintiff was "able to return to light work." (*Id.*)

On October 28, 2008, an MRI of the lumbar spine showed "mild bulging disk at the level of L4-L5 with degenerative joint disease of the facet joints causing a mild spinal canal narrowing without any evidence of a herniation" and "[d]egenerative disk disease of the facet joints at the level of L3-L4" and "[n]o evidence of a compression fracture." (Tr. at 295.)

9

In 2009, Mark Adams, M.D., prescribed physical therapy and epidural steroid injections that gave her "3 weeks of very good relief but her pain unfortunately began to return." (Tr. at 296-300.) An MRI of the lumbar spine taken on December 8, 2009, showed "[d]egenerative disk herniation in the lumbar disk with a bulging annulus and hypertrophic facet joints causing mild central canal stenosis at L4-L5 level [which] remains similar to prior examination" and "[m]oderate facet joints at L3-L4 through L5-S1 level with mild exaggerated lumbar lordosis unchanged from prior examination." (Tr. at 312-13.)

An MRI of the cervical spine taken on December 8, 2009, showed "[m]ild degree of degenerative bulging annulus at C3-C4 level causing minimal effacement of the ventral thecal sac. No focal disk herniation, spinal cord or neural foramen compromise." (Tr. at 314.)

Plaintiff was recommended for surgery in March 2010 since the conservative options did not provide relief. (Tr. at 303.)

In her Daily Activity Report, Plaintiff indicated that she prepares meals for herself and her daughters, she irons, does laundry, washes dishes, dusts, goes out three to four times a week, drives and rides in cars, shops in stores for an hour at a time, attends church regularly and participates in fellowship there, enjoys making centerpieces, reading, watching television and writing and is able to handle her finances. (Tr. at 147-49.)

At the administrative hearing, Plaintiff testified that she has a driver's license and that she drives about three times a week. (Tr. at 52.) Plaintiff stated that she does light housekeeping and grocery shopping and that her daughters help around the house also. (Tr. at 53.) Plaintiff was using a cane at the hearing and she indicated that Dr. Ononuju prescribed it for her in 2008. (Tr. at 53-54.) Plaintiff indicated that she has trouble walking because her "leg goes numb a majority of the time and when I'm walking my muscles, I lose my balance when I'm walking. My muscles are

10

very weak." (Tr. at 55.) Plaintiff stated she can walk for 15 minutes before she needs to take a break but that if she tries to stand for too long, i.e., more than 25 minutes, her "pain increases and [her] whole left leg goes numb and it'll make [her] buckle." (Tr. at 55-56.) Plaintiff stated that she can sit for 15 minutes at a time but that if she sits too long she "start[s] tightening up and [she] starts having increasing pain[.]" (Tr. at 56.) Plaintiff stated that her pain is constant and that it radiates from her "hip into [her] groin area down to my left leg into [her] feet." (Tr. at 54.) Plaintiff testified that the pain medication she takes makes her groggy and sleepy but that it does "alleviate[] some of the pain but not – it doesn't take it away." (Tr. at 54-55.) When asked by her counsel why she loses focus or gets confused, Plaintiff responded, "Because I'm in pain all the time and then the medication I take makes me feel like that." (Tr. at 57.)

The ALJ asked the VE to assume a person with Plaintiff's background who:

is able to perform at the sedentary level that does not require climbing, balancing, kneeling, crouching or crawling or more than occasion[al] stooping.

(Tr. at 58.) The VE responded that such a person could perform the 82,000 video surveillance monitor jobs, and the 160,000 information clerk jobs available at the national level. (Tr. at 58.) The VE indicated that these jobs would allow for sitting and standing at will and would allow for someone to use an assistive device to walk. (*Id.*) When asked by the ALJ, the VE confirmed that her testimony was consistent with the Dictionary of Occupational Titles. (Tr. at 59-60.)

### F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined in the alternative that Plaintiff retained the residual functional capacity to perform a limited range of sedentary work. (Tr. at 21-23.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain

11

amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the "Commissioner erred as a matter of law in failing to properly evaluate the medical records of evidence, and thereby, formed an inaccurate hypothetical that did not accurately portray Ms. Jones' impairments." (Doc. 8 at 6-10.) Along the way, Plaintiff also contends that the RFC assessment should have included the opinion of Plaintiff's treating neurosurgeon, Dr. Mark Adams, who "reported on March 16, 2010, that the diagnosis is low back pain secondary to disc herniation at L4-5." (Doc. 8 at 9.) Plaintiff also contends that the ALJ erroneously found that Plaintiff was not fully credible when "[t]he diagnosis

12

of a herniated disc would, in fact, give credibility to her testimony of pain and radiating pain from the back." (Doc. 8 at 10.)

### a. Credibility Findings

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789, at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645, at *3 (6th Cir. Feb. 11, 1999). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036.

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or, objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y*

*of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." SSR 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

  (i)  [D]aily activities;

  (ii)  The location, duration, frequency, and intensity of . . . pain;

  (iii)  Precipitating and aggravating factors;

  (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

  (v)  Treatment, other than medication, . . . received for relief of . . . pain;

  (vi)  Any measures . . . used to relieve . . . pain.

*Felisky*, 35 F.3d at 1039-40; SSR 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); SSR 96-7p, at *5.

In the instant case, the ALJ thoroughly considered all the relevant factors and determined that Plaintiff's complaints of disabling impairments were not fully credible. (Tr. at 21-24.) After examining the record evidence, I suggest that substantial evidence supports the ALJ's credibility finding. Although Plaintiff has been diagnosed with some degenerative condition of her spine and accompanying pain, there is no medical evidence of a disabling condition or disabling symptoms. An MRI of Plaintiff's left hip was normal. (Tr. at 193.) Dr. Schell noted that although Plaintiff "had this symptom of radicular pain and has had some imaging studies done showing that there are some minimal facet changes in the joints," she "does not have major evidence for lumbar stenosis, no problems with her hip and does not have any major degenerative disc disease." (Tr. at 191.)  Even though Dr. Schell noticed that Plaintiff "does walk with a mild limp" and "has a pain syndrome[,]" he was "not sure [of] the etiology" but stated that "[i]t certainly is nothing neurosurgical[.]" (*Id.*) Dr. Ononuju noted that Plaintiff's "[p]rognosis is good with compliance to medication." (Tr. at 202, 262.)

As to psychological issues, Plaintiff has never been treated for anxiety, depression or any other mental health issues, nor was she ever hospitalized. In addition, Dr. Douglass concluded that Plaintiff was only mildly limited in activities of daily living, maintaining social functioning. and in maintaining concentration, persistence or pace. (Tr. at 232.)

I therefore suggest that the ALJ's credibility finding is supported by substantial evidence and should not be disturbed.

**b.     RFC Analysis, Including SSR 96-8p**

Although Plaintiff argues that the ALJ did not give adequate consideration to the medical evidence and medical source opinions, I suggest that the ALJ properly considered the record evidence and adequately explained his reasons for doing so (Tr. at 21-24), thereby satisfying the

regulation. *See* SSR 96-8p, at *5 (the ALJ may consider evidence such as the claimant's credibility, whether findings are supported by objective medical evidence, and corroboration from other physicians of record). Plaintiff argues the ALJ did not fully explain the weight given to Dr. Adams' March 16, 2010, report "that the diagnosis [was] low back pain secondary to disc herniation at L4-5," but there is no indication that the ALJ ignored this diagnosis. Indeed, the ALJ considered Plaintiff's degenerative disc disease a severe impairment. (Tr. at 20-21.) I therefore suggest that this argument does not undermine the ALJ's findings.

As to the RFC analysis, Plaintiff's treatment for her physical issues consisted of prescription medication and some epidural steroid injections. Such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

In addition, Plaintiff reported to the examining physician that with medication she can walk about an hour before taking a rest, that she "can sit in one position with no back support for about 40-45 minutes at a time," and that she can stand for "about 15-20 minutes at a time." (Tr. at 238.) Plaintiff's strength in her upper and lower extremities was 5/5, dorsiflexion in her left lower extremity was about 4/5, and thigh muscles about 4/5. (Tr. at 240.) In addition, the physical RFC assessment noted its agreement with Dr. Ononuju's assessment that Plaintiff was "able to return to light work." (Tr. at 251.)

I further suggest that, for all the reasons stated under the credibility analysis, substantial evidence supports the RFC analysis. I also suggest that the RFC analysis is supported by Plaintiff's own statements that she prepares meals for herself and her daughters, she irons, does laundry, washes dishes, dusts, goes out three to four times a week, drives and rides in cars, shops in stores for an hour at a time, attends church regularly and participates in fellowship there, enjoys making

centerpieces, reading, watching television and writing and is able to handle her finances. (Tr. at 147-49.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                                               s/ Charles E Binder

Dated: February 28, 2013                                                  CHARLES E. BINDER
                                                                           United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: February 28, 2013                                                   By    s/Patricia T. Morris
                                                                              Law Clerk to Magistrate Judge Binder